UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHEILA J. PLATNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09-CV-0353-CVE-FHM |
| ) | |
| STATE FARM MUTUAL AUTOMOBILE ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Now before the Court is Defendant State Farm Mutual Automobile Company's Motion for Summary Judgment and Brief in Support (Dkt. # 30). Defendant State Farm Mutual Automobile Insurance Company (State Farm) requests summary judgment on plaintiff's claims of breach of insurance contract and bad faith. Plaintiff responds that there is conflicting evidence concerning her right to recover on a theft claim under the insurance policy, and State Farm's motion for summary judgment should be denied.

**I.**

State Farm issued automobile policy number 0701-565-36C (the Policy) to plaintiff as the named insured.[1] The Policy provides comprehensive coverage for any "loss" when a covered

---

[1] Plaintiff generally objects to State Farm's statement of undisputed facts, because each numbered paragraph contains multiple statements of "**inconsistent collateral facts**" intended to impeach the credibility of plaintiff and her children. Dkt. # 36, at 1. State Farm has fully complied with LCvR 56.1, and plaintiff's objection to format of State Farm's statement of undisputed facts and the nature of those facts is meritless.

vehicle is damaged by means other than collision.  Dkt. # 30-4, at 19-20.[2]  Loss means "(1) direct, sudden, and accidental damage to; or (2) total or partial theft of a **covered vehicle**."  Id. at 20.  There is no dispute that plaintiff's 2006 Chevrolet Cobalt was a covered vehicle.  The Policy excludes coverage for:

> 1. ANY **COVERED VEHICLE** THAT IS:
>
>     a. INTENTIONALLY DAMAGED; OR
>
>     b. STOLEN
>
> BY OR AT THE DIRECTION OF AN **INSURED** . . . .
>
> 4. ANY COVERED VEHICLE DUE TO:
>
>     a. THEFT . . .
>
> BY AN INSURED, A CONSIGNEE, AN AGENT OF A CONSIGNEE, OR A PERSON WHO OBTAINS POSSESSION OF THE COVERED VEHICLE WITH THE PERMISSION OF A CONSIGNEE OR AGENT OF A CONSIGNEE.

Id. at 23.  The insured has a duty to cooperate with State Farm during any investigation into a claim by or against the insured, and this duty includes assisting State Farm with "(1) making settlements; (2) securing and giving evidence; and (3) attending, and getting witnesses to attend, depositions, hearings, and trials."  Id. at 28.  When an insured submits a claim for physical damage to a covered vehicle, "each insured . . . must, at our option, submit to an examination under oath, provide a statement under oath, or do both, as reasonably often as we require.  Such person . . . must answer questions under oath, asked by anyone we name, and sign copies of the answers."  Id.  The insured

---

[2] The exhibits to defendant's motion for summary judgment and plaintiff's response were not filed as separate exhibits, but were filed in blocks of exhibits.  There is nothing improper about the parties' method of filing but, to avoid confusion, reference herein to evidence in the summary judgment record is by the docket number, rather than the exhibit number.

must also provide all records, receipts and invoices as requested by State Farm. Id. The Policy contains another general exclusion for concealment or fraud applicable to all coverages under the Policy:

**11.  Concealment or Fraud**

There is no coverage under this policy if *you* or any other *person* insured under this policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

Id. at 31. The Policy also contains an exclusion for any "loss" while the vehicle is operated by plaintiff's son, Brandon Harton. Id. at 2, 4. In addition, the Policy states that "[l]egal action may not be brought against *us* until there has been full compliance with all the provisions of this policy." Id. at 32.

On November 16, 2008, plaintiff notified State Farm that her 2006 Chevrolet Cobalt had been stolen and she made a theft claim under the Policy. State Farm assigned claim representative Mike Owen to plaintiff's theft claim on November 17, 2008. Owen confirmed that plaintiff had reported the alleged theft to the police and reserved a rental car for her. The Rogers County Sheriff's Office (Sheriff's Office) advised Owen that the remains of plaintiff's vehicle were discovered near Oolagah Lake and the vehicle had been burned. Owen informed plaintiff of the news that her vehicle had been found and he noted that plaintiff did not show any emotion. Dkt. # 30-4, at 45. Owen found this surprising because plaintiff stated that this was the first news she had received about her vehicle since the theft. Id. He also put a note on plaintiff's file that an investigation was pending and the claim should not be paid.

Plaintiff gave a recorded statement to Owen on November 18, 2008, and claimed that her vehicle was stolen from her home on the night of November 15, 2008. Dkt. # 30-4, at 49. She stated

that she went to bed around 10:00 p.m. and that she saw the vehicle when she let her dogs out before she went to bed. Plaintiff's daughter, Rebecca Harton, allegedly saw the car when she let the dogs out at 3:15 a.m. on November 16, 2008. Id. Plaintiff stated that her son observed that the car was missing around 4:25 a.m. and woke her up. She claims that she was the last person to drive the car before it was stolen. She also acknowledged that she was one month behind on her car payments, had some credit card debt, and had two pay-day loans of $320 and $1,000. Id. at 51. She also told Owen that Brandon Harton was not permitted to drive the vehicle and he did not have any criminal history, except perhaps driving citations.

Owen also took a recorded statement from Brandon Harton. He stated that he had resided at plaintiff's house since 1989 or 1990. Dkt. # 30-5, at 1. He told Owen that his girlfriend, Carolyn Alexander, picked him up on the evening of November 15, 2008, and they went to his friend's house in Claremore. They arrived at his friend's house around midnight and left at about 2:00 a.m. to go to a Wal-Mart store in Owasso, Oklahoma.[3] Id. at 2. He claims that they walked around Wal-Mart and he bought some ice cream. He stated that Alexander dropped him off at home around 3:30 a.m. and he went to bed.[4] He woke up about an hour later to smoke a cigarette, and this is when he noticed that plaintiff's car was missing. Id. at 4. Brandon Harton claimed that plaintiff's vehicle

---

[3]  Brandon Harton's friend, Kevin Terry, testified in his deposition that Alexander and Brandon Harton were not at his house for more than an hour and they left sometime before midnight. Dkt. # 30-6, at 48. He also testified that Brandon Harton drove plaintiff's vehicle to his house. Id. at 47.

[4]  In her deposition, Alexander testified that she had "no doubt" that she dropped Brandon Harton off at home before 3:00 a.m., because she was in bed by 3:00 a.m. Dkt. # 30-6, at 25-26. Brandon Harton's cell phone records also show that he received a call from Alexander at 2:35 a.m., and Alexander believes that she called Brandon Harton to let him know that she arrived home after dropping him off at plaintiff's house. Id. at 27, 28.

4

did not have any significant maintenance problems, and it was in good working condition at the time of the theft. Id. at 6.

Sheriff's Office Deputy Adam Hull was assigned to investigate plaintiff's theft charge, and he interviewed plaintiff and Brandon Harton. Plaintiff informed Hull that she believed the vehicle was stolen between 3:30 and 4:20 a.m., and she stated that she was not behind on her car payments. Dkt. # 30-4, at 59. She initially told Hull that she did not leave the keys in the car. However, Hull later told plaintiff that the key was found in the ignition of the burned vehicle and plaintiff stated that she may have left her purse in the car that night. Id. In his first interview with Hull, Brandon Harton said that he did not know why anyone would steal the car, because the transmission was broken. Brandon Harton changed his story and later told Hull that the car was working fine. Id. Hull noted that there were "several holes" in Brandon Harton's story, and he had "plenty of time to go burn the car." Id. Hull attempted to interview Alexander as part of his investigation. Dkt. 30-6, at 35. During a telephone conversation, Alexander told Hull that she did not drive Brandon Harton to Terry's house, and she was clear that she and Brandon Harton drove separate cars. Hull attempted to meet with Alexander for a full interview, but Alexander was unwilling to meet with Hull. Id.

Owen called the Sheriff's Office on November 20, 2008, and he was informed that the Sheriff's Office "suspect[ed] either owner or son involved." Dkt. # 30-4, at 41. Due to this assessment, Owen transferred the file to a manager for further review. Id. Plaintiff's theft claim was assigned to Steve Shed, and Shed contacted plaintiff to notify her that he would be handling the claim. Shed requested a credit report for plaintiff and he contacted Alexander to discuss Brandon Harton's conduct on the night of November 15, 2008. The credit report showed that plaintiff was not past due on any account. Id. at 38. Alexander confirmed Brandon Harton's version of the events

5

with some minor differences as to the times they were at certain locations. Id. at 39. Shed also learned that plaintiff's vehicle was equipped with the Pass Key III+ System, which prevented the car from starting unless the a key containing a specific encryption was used. It would not have been possible to hot-wire the car or override the Pass Key III+ System, and the only way to move the car without the key would have been to tow or push the vehicle. Id. at 39.

Shed repeatedly attempted to contact Brandon Harton's friend, Kevin Terry, but Terry would not answer or return phone calls from Shed. He asked plaintiff or Brandon Harton to assist Shed in locating Terry, but he was informed that Terry did not want to get involved. Id. at 38. Shed stressed that Terry's statement was crucial to State Farm's investigation, but Terry could not be located. State Farm determined that it needed to take examinations under oath (EUO) of plaintiff, Brandon Harton, and Rebecca Harton. While the investigation was pending, State Farm extended plaintiff's rental car authorization several times.

Shed drafted a progress report on December 22, 2008 summarizing his investigation of plaintiff's theft claim. In full, Shed's report states:

> [plaintiff] resides in Rural Rogers County Oklahoma. She reports 2-3 weeks before the loss she accidentally dumps her purse out and her 2nd key must have fallen out. She reports on the morning of the loss her son, Brandon, notifies her [vehicle] is stolen. [Plaintiff's] son, reports on the morning of the theft he returned home about 3:30am after being out with his girlfriend. He also reports he went to bed and awoke 30-45 minutes later after hearing something. He went outside and noticed [the vehicle] was gone.
>
> [Plaintiff] has reported financial problems and is 1 month behind on her payment. One previous bankruptcy in the past for credit card debt. She currently has 3 credit cards with balances of 350, 200, and 600. she has two signature loans for 320 and 1000. her mortgage is 700 and car payment is 374 per month. [The vehicle] was recovered near Oolagah Lake, [plaintiff] is familiar with the recovery area. Witness Kevin Terry has advised Deputy Hall he does not want to get involved. [Plaintiff] has financial difficulties.

6

> Unlikely person would wander through a rural area checking cars for lost/missing keys.
> [Plaintiff] familiar with recovery area.
> Witness refusing to cooperate.
> Times as to theft and location of witness' are exact.
>
> INVESTIGATIVE PLAN: Previously discussed claim with TM Hampton and an EUO would better assist in resolving this loss.

Dkt. # 30-4, at 35. Shed notified plaintiff that State Farm would ask her to give an EUO, and he contacted an attorney, Eileen Morris, to request that she take an EUO of plaintiff and her two children. Dkt. # 30-5, at 24.

On January 7, 2009, Morris sent a letter to plaintiff, Brandon Harton, and Rebecca Harton, asking them to appear for an EUO and requesting that plaintiff produce documentation related to the vehicle, her finances, and her cell phone records. Shed also sent plaintiff a letter stating that her theft claim was still pending and advising her that State Farm would require 60 additional days to complete its investigation. Id. at 28. By January 28, 2009, plaintiff had not submitted any of the documents requested by Morris. Morris sent a letter to plaintiff reminding her to comply with State Farm's request for documentation and advised plaintiff that her failure to produce the documents was delaying resolution of her claim. Id. at 29. On February 11, 2009, Morris confirmed that she had received documents from plaintiff and that EUOs of plaintiff and her children were scheduled for February 26, 2009.

On February 26, 2009, Morris first took Rebecca Harton's EUO. Rebecca Harton stated that Alexander came over to plaintiff's house, and Brandon Harton and Alexander left plaintiff's house around midnight. He returned around 3:30 a.m, and Rebecca Harton believed that he was intoxicated. Dkt. # 30-5, at 45. She remembers that Brandon Harton noticed plaintiff's vehicle missing at 4:26 a.m. and started yelling. Rebecca Harton did not remember if plaintiff's vehicle was

7

at the house when Brandon Harton came home, and she states that Brandon Harton could not clearly recall this fact. Id. at 46. People in Oolagah associated Brandon Harton with plaintiff's vehicle, because he routinely drove the vehicle. Id. at 40.

Brandon Harton testified that his sister told him the car was in plaintiff's driveway around 3:00 a.m., and he did not look for the car when Alexander dropped him off. Dkt. # 30-5, at 59. Brandon Harton's driver's license expired in 2008 and he did not have a valid driver's license in November 2008. Id. at 63. He claims that he called Alexander around 9:00 p.m. on November 15, 2008, and asked her to come over to plaintiff's house. Id. at 70-72. Brandon Harton stated that he did not have any way to confirm what time he left the house, because no one was home when Alexander picked him up. Id. at 77. He asked Alexander to drive him to Wal-Mart to buy ice cream, and claims that Terry called him before they arrived at Wal-Mart. Id. at 73. They allegedly stopped at Wal-Mart and purchased ice cream before going to Terry's house, and he claims they arrived at Terry's house around 12:30 a.m. Id. at 81. Throughout the EUO, Morris had a difficult time obtaining straightforward answers from Brandon Harton, and she had to repeat questions several times before Brandon Harton would give direct answers. Shed attended Brandon Harton's EUO, and noted that Brandon Harton was "very evasive and had a poor memory regarding important details." Dkt. # 30-4, at 34. Brandon Harton's EUO ended after 5:00 p.m., and Morris told plaintiff that her EUO would have to be rescheduled.

On March 5, 2009, State Farm informed plaintiff that her claim was still pending, and she had not provided all of the documents requested by State Farm or submitted to an EUO. Plaintiff sent a letter to State Farm on March 6, 2009 demanding that State Farm pay her theft claim immediately, and she gave State Farm until March 16, 2009 to respond to her letter. Dkt. # 30-6,

8

at 2. Morris contacted plaintiff, but was advised that plaintiff had retained an attorney. Morris attempted to contact plaintiff's attorney, but he would not return Morris' calls or respond to her letters. Id. at 4. On March 20, 2009, Morris advised plaintiff that her claim would remain pending until she provided an EUO and all of documents requested by State Farm. Id.

On March 29, 2009, plaintiff filed this case in Rogers County District Court alleging breach of contract and bad faith claims against State Farm. On March 31, 2009, plaintiff told Morris that she would not give an EUO, and Brandon Harton and Alexander would not provide any additional documents or statements to State Farm. Id. at 5. Due to the pending lawsuit and plaintiff's refusal to give an EUO, Morris advised State Farm that she would make no further attempts to schedule an EUO of plaintiff. State Farm removed the case to federal court, and moved to stay plaintiff's claims due to her failure to reappear for an EUO. Dkt. # 12. The Court denied State Farm's motion to stay, but suggested that plaintiff might likely obtain speedier resolution of her claim by complying with reasonable requests for information from State Farm. Dkt. # 21, at 6.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but

9

rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

State Farm seeks summary judgment on plaintiff's claims. It argues that it fully investigated plaintiff's theft claim and gathered substantial evidence suggesting that her claim may have been fraudulent. Plaintiff argues that she did not submit a fraudulent insurance claim and, at a minimum, there is conflicting evidence as to whether State Farm was obligated to pay her theft claim.

### A.

State Farm argues that it withheld payment on plaintiff's theft claim based on a legitimate coverage dispute and conducted an adequate investigation of her claim, and that it is entitled to summary judgment on plaintiff's bad faith claim. Plaintiff responds that State Farm did not reject

or offer to pay her claim within 90 days as required by Oklahoma law, and this shows that State Farm acted in bad faith. She also argues that State Farm's dispute with the merits of her theft claim is based on unreliable evidence, and State Farm acted in bad faith by refusing to pay her claim.

Under Oklahoma law, "an insurer has an implied duty to deal fairly and act in good faith with its insured." Christian v. Am. Home Assurance Co., 577 P.2d 899, 904 (Okla. 1977). Violation of this duty gives rise to an action in tort. Id. "The essence of the tort of bad faith, as it is recognized in Oklahoma, is the unreasonableness of the insurer's actions." Conti v. Republic Underwriters Ins. Co., 782 P.2d 1357, 1360 (Okla. 1989). The Oklahoma Supreme Court and the Tenth Circuit have made clear that an insurer does not subject itself to a claim of bad faith merely by disputing coverage. "The insurer does not breach the duty of good faith by refusing to pay a claim or by litigating a dispute with its insured if there is a 'legitimate dispute' as to coverage or amount of the claim, and the insurer's position is 'reasonable and legitimate.'" Thompson v. Shelter Mut. Ins., 875 F.2d 1460, 1462 (10th Cir. 1989) (citing Manis v. Hartford Fire Ins. Co., 681 P.2d 760, 762 (Okla. 1984)). "The decisive question is whether the insurer has a 'good faith belief, at the time its performance was requested, that it had justifiable reason for withholding payment under the policy.'" Buzzard v. Farmers Ins. Co., Inc., 824 P.2d 1105, 1109 (Okla. 1991) (quoting Buzzard v. McDanel, 736 P.2d 157, 159 (Okla. 1987)). In order to succeed on a claim for bad faith, the claimant must be able to prove that the insurer's actions went beyond an act of simple negligence; however, it is not necessary to prove that the insurer acted recklessly to prove liability, even though recklessness is a requirement for punitive damages in a bad faith claim. Badillo v. Mid Century Ins. Co., 121 P.3d 1080, 1094 (Okla. 2005). The Court can consider only the "facts known or knowable about the claim at the time the insured requested the insurer to perform its contractual obligation."

Sims v. Travelers Ins. Co., 16 P.3d 468, 471 (Okla. Civ. App. 2000); see also Timberlake Construction Co. v. United States Fidelity & Guaranty Co., 71 F.3d 335, 340-41 (10th Cir. 1995).

Plaintiff misunderstands the type of "conflicting evidence" that prevents summary judgment for an insurer on a bad faith claim, and her argument does not address the key issue of whether State Farm denied coverage based on a legitimate coverage dispute. Plaintiff claims that there is a factual dispute as to whether the Policy covers her theft claim, and State Farm should have resolved any factual disputes in favor of finding that the claim is covered. Dkt. # 36, at 17-19. However, this is not the relevant issue. Instead, the Court must review the summary judgment record to determine if there is a genuine issue of material fact as the existence of a legitimate coverage dispute and the reasonableness of State Farm's handling of plaintiff's claim. See Ball v. Wilshire Ins. Co., 221 P.3d 717, 725 ("The critical question in a bad faith claim is whether the insurer had a 'good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding [or delaying] payment under the policy.'"). The "conflicting evidence" cited by plaintiff may preclude summary judgment on her breach of contract claim, but the existence of conflicting evidence as to liability may actually support State Farm's decision to withhold payment on plaintiff's theft claim if the conflicting evidence suggests that plaintiff or her son made a material misrepresentation to State Farm. Powell v. Farmers Ins. Co., Inc., 2008 WL 3387077, *12 (N.D. Okla. Aug. 8, 2008).

State Farm argues that its independent investigation uncovered evidence casting doubt on the veracity of statements made by plaintiff and her children, and it had a legitimate basis to withhold payment while it continued its investigation of plaintiff's theft claim. The claim adjustor initially assigned to plaintiff's claim, Owen, was surprised that plaintiff expressed no emotion after learning that her burned vehicle had been discovered near Oolagah Lake. Dkt. # 30-4, at 45.

Plaintiff initially told Owen that both keys to the vehicle were in her purse, but then changed her statement and said that a second key may have fallen out when her purse spilled in the car. Id. at 44. Owen spoke to the Sheriff's Office, and was told that the Sheriff's Office was "suspect" of plaintiff and Brandon Harton. Id. at 41. Hull found it unusual that plaintiff did not seem upset about the theft of her vehicle, and Alexander also told Hull that she did not pick up Brandon Harton and take him to Terry's house but, instead, they each drove separate vehicles and Brandon Harton drove plaintiff's vehicle to Terry's house. Dkt. # 30-6, at 35. As State Farm's investigation continued, it noticed inconsistencies with the statements of various witnesses and these inconsistencies cast doubt on the veracity of plaintiff's and Brandon Harton's initial statements to State Farm. For example, Carolyn Alexander does not remember every detail of the night of November 15, 2008, but she does remember that she did not go into plaintiff's house and stay until midnight as Brandon Harton has stated. Dkt. # 30-6, at 17. Alexander recalls that she was in bed before 3:00 a.m., and her cell phone records suggest that she called Brandon Harton when she arrived home around 2:30 a.m. Id. at 25-26, 28. Terry also recalls that Alexander and Brandon Harton drove separate vehicles to his house, and they did not stay at his house for more than an hour. Dkt. # 30-6, at 47, 48.

State Farm has produced evidence suggesting that plaintiff may have had a financial motive for filing a false insurance claim. Plaintiff informed State Farm that she was one month behind on her car payment, and she owed about $14,000 on the vehicle. Dkt. # 37-3, at 15 (plaintiff's affidavit of vehicle theft sent to State Farm immediately after the accident states that plaintiff was one month behind on her car payments). Plaintiff does not dispute that she owed more on her car loan than the car was worth. Dkt. # 37-2, at 3. Plaintiff also had some credit card debt and two small outstanding loans. Dkt. # 30-4, at 44. However, plaintiff told Hull that she was current on her car payments, and

13

this contradicts her representation to State Farm that she was one month behind on her car payments. Plaintiff has submitted an affidavit stating that she was occasionally late with her car payments, but she always paid the late fees and she continued to make payments after the car was stolen in November 2008. Dkt. # 37-2, at 3. State Farm argues that Brandon Harton made conflicting statements about the condition of plaintiff's vehicle. Brandon Harton told Hull that the vehicle was "junk" and he was surprised that anyone would steal it, because the transmission was going out. Dkt. # 30-6, at 30. During a subsequent interview, Brandon Harton changed his story and said the vehicle was running "fine." Id. at 37. State Farm reasonably inferred that the vehicle may not have been in good operating condition at the time of the alleged theft. Based on factual disputes created by plaintiff's and Brandon Harton's own statements, State Farm had a sufficient factual basis to question whether plaintiff's financial status and the operating condition of plaintiff's vehicle provided a motive for plaintiff to submit a false insurance claim.

State Farm also argues that plaintiff failed to fully cooperate with its investigation by failing to appear for an EUO, and this supports State Farm's argument that it did not act in bad faith by withholding payment on plaintiff's theft claim. Plaintiff appeared for an EUO with her children on February 26, 2009, but State Farm's attorney, Morris, elected to take the EUOs of Brandon and Rebecca Harton before taking plaintiff's EUO. Morris ran out of time to take plaintiff's EUO and asked plaintiff if she could reschedule plaintiff's EUO. Instead, plaintiff contacted an attorney and filed this lawsuit shortly afterwards, and she refused to give an EUO. The Court rejected State Farm's argument that plaintiff's refusal to reappear for an EUO prevented her from bringing this lawsuit. Dkt. # 21. However, the Court noted that State Farm's investigation of plaintiff's theft claim was not complete, in part, "due to plaintiff's failure to fully cooperate with State Farm's

investigation," and suggested that an EUO might expedite resolution of her theft claim. Id. at 6. The Court finds that plaintiff's refusal to reappear for an EUO does not weigh in favor of either party. It is undisputed that plaintiff appeared for an EUO on February 26, 2009, but the EUOs of her children took more than eight hours and Morris could not take plaintiff's EUO on that day. However, the Policy requires plaintiff to appear for an EUO "as reasonably often as [State Farm] require[s]." Dkt. # 30-4, at 28. Both parties bear some responsibility for the failure to obtain an EUO from plaintiff. Plaintiff's failure to reappear for an EUO does not support State Farm's request for summary judgment on plaintiff's bad faith claim, but State Farm's decision to withhold payment on plaintiff's theft claim based, in part, on plaintiff's refusal to appear at a later date for an EUO is not evidence of bad faith.

Plaintiff disputes State Farm's evidence and states that she did not burn her vehicle or conspire with any other person to submit a false insurance claim. Plaintiff and Brandon Harton have submitted affidavits stating that they did not burn, or conspire to burn, plaintiff's vehicle with the intent of filing a false insurance claim. Dkt. # 37-2, at 2, 7. She claims that the Court should disregard Hull's deposition testimony, because he was not trained to investigate auto theft, arson, or insurance fraud cases, and he intentionally lied to plaintiff in an attempt to force her to confess to a crime. Dkt. # 36, at 8. These issues go to Hull's credibility as a witness, and it is undisputed that he informed State Farm of his suspicions about the veracity of plaintiff's and her son's statements to police. The Court makes no finding about the accuracy of Hull's suspicions, but the fact that he relayed these suspicions to State Farm is relevant. Plaintiff asserts that the alleged misrepresentations identified by State Farm go to collateral issues, and do not create a legitimate basis to dispute plaintiff's claim that her vehicle was stolen and burned by an unidentified third

15

party. She claims that the following factual disputes are "collateral" to State Farm's decision to pay her claim:

> (1) what time Brandon [Harton] and his girlfriend Carolyn Alexander went to Kevin Terry's house; (2) what time Brandon [Harton] and Carolyn arrived at Kevin Terry's house; (3) what time Brandon [Harton] and Carolyn [Alexander] left Kevin Terry's house; (4) what time Brandon arrived home at Plaintiff's house after leaving Kevin Terry's house; (5) whether Brandon [Harton] drove Plaintiff's Chevrolet Cobalt from Plaintiff's house to Kevin Terry's house, or whether Carolyn Alexander drove him from Plaintiff's house to Kevin Terry's house; (6) what time Brandon [Harton] and Carolyn [Alexander] went to Wal-Mart in Owasso for ice cream; (7) how long Brandon [Harton] and Carolyn [Alexander] were at the Wal-Mart before going to Plaintiff's house; (8) what time Brandon [Harton] woke up and went outside to discover that his mother's Chevrolet Cobalt automobile was missing; (9) whether or not Plaintiff was behind on her car payments to CitiFinancial Auto; (10) whether or not Plaintiff's automobile was in good operating condition; and (11) whether Plaintiff was experiencing financial problems."

Dkt. # 36, at 13-14. Contrary to plaintiff's argument, many of these facts were critical to State Farm's investigation, and any misrepresentations concerning the value of the car are material as a matter of law. Wagnon v. State Farm Fire & Cas. Co., 146 F.3d 764, 768-69 (10th Cir. 1998) (alleged misrepresentations about ownership and value of stolen property were material to insurer's decision to pay claim). The timing of events is critical, and evidence contradicting plaintiff's and Brandon Harton's initial statements is not collateral. State Farm discovered that the plaintiff's and Brandon Harton's initial statements that plaintiff's vehicle was at plaintiff's house all night may have been false. Instead, Brandon Harton may have driven the vehicle to Terry's house, and statements by Terry and Alexander show that Brandon Harton cannot account for all of his time on night of November 15, 2008. These factual disputes provide strong support for State Farm's decision to withhold payment on plaintiff's theft claim. Even if the Court were to find that these issues are collateral, the number of alleged misrepresentations create a legitimate basis for State

16

Farm to question the validity of plaintiff's theft claim and withhold payment pending further investigation.

Plaintiff argues that State Farm did not offer to settle or reject her claim within 90 days as required by OKLA. STAT. tit. 36, § 3629, and this shows that State Farm acted in bad faith by delaying a decision on her theft claim. Section 3629 provides:

> A. An insurer shall furnish, upon written request of any insured claiming to have a loss under an insurance contract issued by such insurer, forms of proof of loss for completion by such person, but such insurer shall not, by reason of the requirement so to furnish forms, have any responsibility for or with reference to the completion of such proof or the manner of any such completion or attempted completion.
>
> B. It shall be the duty of the insurer, receiving a proof of loss, to submit a written offer of settlement or rejection of the claim to the insured within ninety (90) days of receipt of that proof of loss. Upon a judgment rendered to either party, costs and attorney fees shall be allowable to the prevailing party. For purposes of this section, the prevailing party is the insurer in those cases where judgment does not exceed written offer of settlement. In all other judgments the insured shall be the prevailing party. If the insured is the prevailing party, the court in rendering judgment shall add interest on the verdict at the rate of fifteen percent (15%) per year from the date the loss was payable pursuant to the provisions of the contract to the date of the verdict. This provision shall not apply to uninsured motorist coverage.

OKLA. STAT. tit. 36, § 3629. The purpose of § 3629 is to "encourage the prompt settlement of claims, in part by offering the prevailing party attorney fees." Ass'n of County Comm'rs of Oklahoma v. Nat'l American Ins. Co., 116 P.3d 206, 212 (Okla. Civ. App. 2005). The Oklahoma Supreme Court has held that failure to comply with § 3629 simply results in waiver of the insurer's right to obtain in attorney fees in subsequent litigation over the disputed insurance claim, and no other sanction is permitted under the statute. Shinault v. Mid-Century Ins. Co., 654 P.2d 618 (Okla. 1982). The insurer's failure to comply with § 3629 is not evidence of bad faith, nor is an insurer barred from an investigating a claim after 90 days has expired. Hale v. A.G. Ins. Co., 138 P.3d 567, 571-72 (Okla. Civ. App. 2006). There is no dispute that State Farm's investigation took more than

17

90 days. However, this fact does not tend to show that State Farm acted in bad faith by delaying a decision on plaintiff's theft claim. The summary judgment record shows that State Farm gathered a substantial body of evidence questioning the validity of plaintiff's theft claim, but it believed more information was necessary before issuing a final decision. However, plaintiff refused to reappear for an EUO after February 26, 2009 and, instead, demanded immediate payment of her claim and contacted an attorney. State Farm also had difficulty locating Alexander and Terry, and this delayed State Farm's investigation. Under these circumstances, State Farm did not act unreasonably by refusing to settle or reject plaintiff's theft claim within 90 days of receipt, and the length of the investigation does not show that State Farm acted in bad faith.

Considering all of the evidence in the summary judgment record, the Court finds that State Farm is entitled to summary judgment on plaintiff's bad faith claim. State Farm withheld payment on plaintiff's theft claim based on a legitimate coverage dispute concerning the applicability of the fraud and concealment exclusion of the Policy. State Farm discovered evidence casting doubt on key aspects of plaintiff's and Brandon Harton's statements, and plaintiff's decision to cease cooperating with State Farm and file a lawsuit contributed to the delay in resolving her theft claim. Due to the numerous contradictions and inconsistencies in plaintiff's and Brandon Harton's initial statements and the evidence gathered during State Farm's investigation of plaintiff's theft claim, the Court finds that State Farm did not act in bad faith by withholding payment on plaintiff's theft claim.

**B.**

State Farm also argues that it is entitled to summary judgment on plaintiff's breach of contract claim, because plaintiff directly or indirectly violated the fraud and concealment provision of the policy and refused to cooperate with State Farm's investigation of her claim. Plaintiff

18

incorporates all of her previous arguments, and does not assert any new argument in opposition to State Farm's request for summary judgment as to her breach of contract claim.

Under Oklahoma law, an insurance contract should be construed according to the terms set out within the four corners of the document. First American Kickapoo Operations, L.L.C. v. Multimedia Games, Inc., 412 F.3d 1166, 1173 (10th Cir. 2005); Redcorn v. State Farm Fire & Cas. Co., 55 P.3d 1017, 1020 (Okla. 2002); London v. Farmers Ins. Co., Inc., 63 P.3d 552, 554 (Okla. Civ. App. 2002). If the terms of the contract are "unambiguous, clear and consistent, they are to be accepted in their ordinary sense and enforced to carry out the expressed intention of the parties." Roads West, Inc. v. Austin, 91 P.3d 81, 88 (Okla. Civ. App. 2004). A court should not create an ambiguity in the policy by "using a forced or strained construction, by taking a provision out of context, or by narrowly focusing on a provision." Wynn v. Avemco Ins. Co., 963 P.2d 572, 575 (Okla. 1998). A policy term will be considered ambiguous only if it susceptible to more than one reasonable interpretation. Max True Plastering Co. v. U.S. Fidelity & Guar. Co., 912 P.2d 861, 869 (Okla. 1996). If an insurance contract contains an ambiguous term, the Court may refer to extrinsic evidence to interpret the insurance policy. Gable, Simmons & Co. v. Kerr-McGee Corp., 175 F.3d 762, 767 (10th Cir. 1999) (citing Pierce Couch Hendrickson Baysinger & Green v. Freede, 936 P.2d 906, 912 (Okla. 1997)). When construing an ambiguous term in an insurance contract, a court must consider "not what the drafter intended . . . but what a reasonable person in the position of the insured would have understood [the ambiguous provision] to mean." American Economy Ins. Co. v. Bogdahn, 89 P.3d 1051, 1054 (Okla. 2004).

The parties have provided conflicting evidence as to whether plaintiff had some role in the theft and burning of her vehicle, and this is a genuine issue of material fact precluding summary

judgment on plaintiff's breach of contract claim. State Farm has produced circumstantial evidence suggesting that plaintiff and her son have not been truthful about the theft of the vehicle. However, plaintiff and her son have submitted affidavits denying any involvement in the theft. While State Farm had a legitimate basis to dispute coverage, State Farm has not produced undisputed evidence showing that the alleged theft of plaintiff's vehicle is not covered by the Policy, and there is a genuine issue of material fact as to the identity of the person or persons responsible for the theft. There is also an unpublished Tenth Circuit decision stating that an insurer may avoid paying a claim based on allegations of fraud only if the insurer proves by clear and convincing evidence that the insured acted with the intent to deceive. Scottsdale Ins. Co. v. Tolliver, 261 Fed. Appx. 153, 162 (10th Cir. Mar. 11, 2008).[5] Due to the existence of a genuine issue of material fact and the potential for a heightened evidentiary standard, the Court finds that State Farm is not entitled to summary judgment on plaintiff's breach of contract claim.[6]

**IT IS THEREFORE ORDERED** that Defendant State Farm Mutual Automobile Company's Motion for Summary Judgment and Brief in Support (Dkt. # 30) is **granted in part** and **denied in part**: it is granted as to plaintiff's bad faith claim and denied as to plaintiff's breach of contract claim.

**DATED** this 18th day of May, 2010.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[5] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

[6] In another unpublished decision, the Tenth Circuit held that Oklahoma law requires an insurer to prove a defense of fraud or concealment by a preponderance of the evidence, and rejected the plaintiff's argument that the proper burden of proof was the clear and convincing standard. Newman v. State Farm Fire and Cas. Co., 290 Fed. Appx. 106, 112 (10th Cir. Aug. 5, 2008).